295 So.2d 833 (1974)
State of Louisiana, through The Dept. of Highways
v.
Covington Interstate, Inc. (9818-A). Consolidated with:
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
George L. WAX (9818-B).
Nos. 9818-A, 9818-B.
Court of Appeal of Louisiana, First Circuit.
May 28, 1974.
Rehearing Denied July 3, 1974.
Writ Refused September 18, 1974.
Alvin J. Liska, New Orleans, and Johnie E. Branch, Jr., Baton Rouge, for Highway Dept.
William J. Jones, Jr., Covington, for defendant-appellant Covington Interstate.
Alvin J. Liska and Jesse S. Guillot, New Orleans, for plaintiff-appellant.
William J. Jones, Jr., Covington, for defendant-appellant Wax.
Before SARTAIN, BAILES and VERON, JJ.
VERON, Judge:
These expropriation cases, namely, State of Louisiana Through the Department of Highways versus Covington Interstate, *834 Inc., and State of Louisiana, Through the Department of Highways versus George L. Wax, were consolidated for purposes of trial. Separate opinions will be handed down by the Court in each case, and this decision will generally relate only to George L. Wax.

I. DECISION OF TRIAL COURT
In each of these cases, the expropriation was made for the construction of a cloverleaf design interchange (sometimes called a "modified cloverleaf design") at the intersection of Interstate Highway 12 and U.S. Highway 190 in St. Tammany Parish. The expropriation of George L. Wax's property took place on June 9, 1971, and the Highway Department deposited $29,430.00 in the Registry of the Court as compensation for the part taken. No money was deposited for severance damages.
After considering all of the evidence presented, the trial court awarded the defendant, George L. Wax, $34,660.78 for the part taken, plus $31,579.60 for severance damages, for a total award of $66,240.38, with credit for the sum deposited with the court by plaintiff, plus legal interest and costs.
From this judgment, both parties appealed. We affirm the award of the trial court.

II. FACTS
Before the taking, the defendant owned an improved tract of land in the northwest quadrant of the interchange of Interstate Highway 12 and U.S. Highway 190, containing 9.283 acres, or 404,367 square feet. The tract included 755 front feet on U.S. 190 and was generally rectangular in shape. Unlike the Covington Interstate tract in the companion case decided this day, the Wax tract had good elevation, approximately at road grade. The improvements on the Wax tract consisted of a residence and other improvements that are normal for a residence.
The expropriated property consisted of two parcels which were contiguous and which together totaled 2.219 acres, or 96,670.7 square feet. The residence was not situated on the part taken.
George L. Wax was the record owner of the entire 9.283 acre tract involved, having acquired title through two purchases dated June 1, 1968, for a total consideration of $145,000.00. The testimony showed that title was taken for this consideration in reliance on the "diamond design interchange" planned (but never constructed) by the Department of Highways for the intersection of Interstate Highway 12 and U.S. 190.
Under the "diamond design", the Wax tract was located about 1066 feet north of the end of the access road in the northwest quadrant of the interchange. All of the appraisers agreed that the originally planned "diamond design interchange" enhanced the value of the tract Wax acquired.

III. DIAMOND DESIGN ENHANCEMENT
Our determination of the value of the part taken depends, at the outset, on resolving the issue raised by plaintiff that defendant is not entitled to any compensation for enhancement of the value of the property as a result of the originally planned diamond design interchange.
We had occasion to consider this identical issue in the recent case of State of Louisiana, Through Department of Highways v. Beatty, 288 So.2d 900 (La.App. 1 Cir. 1974), writ denied, wherein we stated:
"This issue arises out of the fact that the design for the interchange at Highway 190 and I-12 was changed from an original diamond design to the modified cloverleaf design that was finally adopted. By stipulation of counsel, the testimony of Mr. Frank Heroy, Jr., interstate engineer for the Highway Department, taken in another proceeding involving this same interchange was admitted in evidence in this case. Mr. Heroy stated that in about 1965 the Highway Department *835 first adopted a "diamond design" interchange for the intersection of Highway 190 and I-12. At that time certain parcels of land were expropriated for this interchange. However, in November of 1968 when the construction of a controlled access highway on Highway 190 from I-12 to Chinchuba, Louisiana was adopted, the interchange was changed to a modified cloverleaf design. According to Mr. Heroy this modified cloverleaf design was not foreseeable at the time the diamond design was first announced and only came about as part of the subsequent program for controlling access on Highway 190 which was a separate project from the original I-12 project.
"The Beatty tract was about 1600 feet south of the end of the control of access under the original diamond design. The expropriation in the instant case was made to accommodate the modified cloverleaf design interchange adopted as part of the controlled access system for Highway 190.
"Thus, the issue presented is whether the proximity of the Beatty property to the end of the control of access under the original diamond design resulted in any increase in value of the parent tract and whether the defendant-landowner is entitled to that increase.
. . . . . .
"Plaintiff contends that the trial court erred in accepting the 50 cents per square foot valuation placed on the property on the grounds that this value represents the value of the property as enhanced by the improvement. In support of this contention plaintiff cites the case of State, Through Department of Highways v. Trippeer Realty Corporation, 276 So.2d 315 (La.Sup.Ct., 1973) wherein the court stated that the value of property expropriated should be fixed considering the property as of the time of the taking but not as enhanced by the purpose of the taking.
"While the above stated principle may be the general rule, it is not without exception. It has been stated that where the expropriated property was not included within the scope of the project from the beginning, and the project was subsequently enlarged to include that additional property, or if the subsequent expropriation was for a separate endeavor, then the landowner has been held entitled to receive compensation for his land at the enhanced value added to the property by reason of its proximity to the initial improvement. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336 (1943). This was precisely the result reached in the two cases cited by the trial court in written reasons for judgment in this case. State, Through Department of Highways v. Martin, 196 So.2d 63 (3rd La.App.1967), writ refused 250 La. 736, 199 So.2d 179 (1967); State Department of Highways v. Boles, 240 So.2d 786 (2nd La.App.1970).
"The evidence in the instant case discloses that the original Interstate-12 project called for a `diamond design' interchange which would have resulted in the subject property being located in a favorable position near the end of the interchange. According to the testimony of Mr. Heroy, at the time of the first taking for the diamond design interchange in 1965, it was not probable nor foreseeable that the design would be changed. The subsequent construction project for controlling access on Highway 190 was a separate and independent project from the original I-12 project. It was this second project that resulted in the modification of the interchange and the taking of the subject property. Therefore, if the original diamond design increased the before value of the land, the landowner should be entitled to this increase."
We find nothing to distinguish the Beatty case from the instant suit on this issue, and we believe the law stated therein to be correct. Accordingly, we find no error in the trial court's decision that the defendant *836 here is entitled to just compensation based on the value of the property taken in 1971 as enhanced by the originally planned diamond design interchange for which other property was expropriated in 1965.

IV. VALUE OF THE PART TAKEN
In an expropriation proceeding the landowner is entitled to compensation equivalent to the market value of the property taken according to the highest and best use of the property. The best evidence of the market value of property is recent sales of similar tracts in the same vicinity, commonly referred to as comparables. State, Through Department of Highways v. Kennedy, 193 So.2d 848 (La.App. 1 Cir. 1966), writ refused 250 La. 273, 195 So.2d 149 (1967).
The appraisers testifying for the Highway Department were Darrell V. Willet and Edward J. Deano. The appraisers testifying for defendant George L. Wax were Frank J. Patecek and John Lejeune. Each of the expert appraisers concluded that the highest and best use of the defendant's property before the taking was for commercial purposes.
Mr. Willet and Mr. Deano each submitted two appraisals of the property taken. Willet's first appraisal showed the unit land value to be 25.2¢ per square foot. His second appraisal set the value at 26.4¢ per square foot. Both of Deano's appraisals showed the unit land value to be 29.8¢ per square foot. Neither of the Department's appraisers included any enhancement in value to the Wax tract resulting from the 1965 expropriation for the originally planned diamond design interchange.
Mr. Lejeune and Mr. Patecek each made appraisals which set the unit value of the property taken at 50¢ per square foot. Both included diamond design enhancement to the Wax tract in their valuations.
After assessing all of the comparables and appraisals based thereon, the trial judge concluded that the best evidence of the value of the Wax tract as of the date of the taking was the acquisitions by Wax of the entire tract for a total of $145,000.00, or a unit land value of 36¢ per square foot.
Willet and Deano each assessed small additional values to the land taken as a result of finding that the improvements on the remaining tract contributed to the value of the entire tract. Patecek, Lejeune and the trial court all concluded that the residential improvements contributed no added value to the highest and best use of the land as commercial property.
The following chart shows a summary of the values assessed by each appraiser and the trial court:

 WILLET DEANO PATACEK LEJEUNE TRIAL COURT
Land
Taken $25,519 $28,847 $48,335.36 $48,335 $34,660.78
Improvements 229 583 -0- -0- -0-
 _______ _______ __________ _______ __________
Total $25,748 $29,430 $48,335.36 $48,335 $34,660.78

It is well settled in our law that where the experts differ, the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony and his decision as to the valuation of property should not be disturbed on appeal unless shown to be manifestly erroneous. State, Through Department of Highways v. Kennedy, supra; State, Through Department of Highways v. Christ Baptist Church, 197 So.2d 83 (La. App. 1 Cir. 1967).
*837 In light of our decision that the enhancement of value to the land resulting from the diamond design plan must be considered in determining just and adequate compensation for the part taken, we reject, as did the trial judge, the appraisals of Willet and Deano as being too low.
In evaluating all of the other evidence introduced at the trial, we find no manifest error in the trial court's finding that the acquisitions of the property by Wax represent a fair market value of the land as enhanced by the diamond design plan. The primary issue then is whether the trial judge was correct in accepting this value as being the best evidence of the value of the part taken at the time of the taking in 1971.
Defendant argues forcefully that the trial court erred in failing to award compensation which included adjustments for price increases in the property occurring since the acquisitions by Wax in 1968 (at the rate of 12% per annum). The trial judge examined all of the comparables presented by the appraisers, and after giving defendant full credit for the inflated value of the land taken which resulted from the diamond design plan, concluded that:
"The Court finds that there is no evidence to support the time increases found by Patecek and Lejeune for the period between the Wax acquisitions (6/1/68) and the date of the taking (6/9/71) since the property had already increased in value out of proportion to other property in the vicinity due to the influence of the diamond design ..." (Emphasis added)
The entire record herein contains ample evidence to support the trial court's finding. Accordingly, we see no manifest error in his well-reasoned rejection of the adjustments for price increases which Patecek and Lejeune had included in their appraisals.
The specific evidence which defendant points to as supporting an award of a 12% per annum price increase involves the twin appraisals of Patecek and Lejeune, who used identical comparables to show time adjustment. These comparables reflect sales beginning in 1953 and others up to early 1969. The twelve per cent figure was determined by averaging price increases over this 15½ year period which included only about nine months of the time between Wax's acquisitions in 1968 and the taking herein on June 9, 1971. No comparables were given to show any increase for the remaining twenty-seven months of that time period. This was the basis on which the trial judge concluded that insufficient evidence was presented.
While we might take judicial notice of the fact that prices in general have been increasing in many segments of our economy, we are constrained here to note the trial judge's determination that this particular tract of land had already increased in value out of proportion to other property in the vicinity. Such a specific finding by the trial court, when supported by strong evidence in the record, compels our conclusion that no manifest error was committed by the trial court.

V. SEVERANCE DAMAGES
Each of the parties herein has raised several issues regarding the trial court's award of $31,579.60 as severance damages. Because of the clarity with which the trial judge outlined his reasons for judgment on these issues, and the pertinent testimony leading to his conclusions, we will refer first to his entire opinion on this subject:
"Before the taking in this proceeding, the defendant's land had 755 feet of frontage on U.S. 190 and there was free and unrestricted ingress and egress to U.S. 190 along this entire 755 feet of frontage. Although defendant has 756.75 feet of frontage on U.S. 190 after the taking in this proceeding, only 39.76 feet *838 of that frontage can be used for ingress and egress to U.S. 190 for the reason that control of access will be imposed on the other 716.99 feet of frontage on U.S. 190 by building a fence or some other barrier along this 716.99 feet of frontage to prevent ingress and egress. That is, before the taking, the Wax tract enjoyed ingress and egress to U.S. 190 along its entire 755 feet of frontage, whereas after the taking, the Wax tract has only 39.76 feet of ingress and egress to U.S. 190, and this 39.76 feet is located adjacent to the North line of the Wax property in the Northeast corner of the property.
"The Wax property is located in the Northwest Quadrant of the Cloverleaf Design Interchange. There will be no service or frontage road in the Northwest Quadrant of the Cloverleaf Design Interchange where the Wax property is situated, but the Highway Department will build service or frontage roads in the other three quadrants of the cloverleaf design interchange.
"Robert A. Berlin, Director of Planning for the Parish of St. Tammany, testified that the remainder land's frontage of 39.76 feet with unrestricted ingress and egress from U.S. 190 was not sufficient for commercial or industrial use under the St. Tammany Parish Zoning Ordinance and Subdivision Regulatory Ordinance. Berlin testified that if George L. Wax sought a permit for a commercial or industrial use on the remainder after the taking in the proceeding, the permit could not be granted without a waiver or variance because only 39.76 feet of U.S. 190 frontage was available for ingress and egress. Berlin further testified that he did not remember the Police Jury ever waiving the width requirement for ingress and egress which is normally 60 feet, except that the requirement is 50 feet for "roll over" curbs with underground drainage.
"Of the four appraisers, Deano found no severance damage in either of his appraisals; Willet found $29,262 in severance damage in his first appraisal, but none in his second appraisal; Patecek found $43,470.32 in severance damage; and Lejeune found $38,000 in severance damages.
"In his first appraisal, Willet concluded that the 39.76 feet of access to U.S. 190 was a `most severe limitation' (Wax P-7, page 10, cont'd), and Willet computed the severance damages resulting from this 39.76 feet of access by figuring the cost of constructing a 750 foot roadway similar to a frontage road on defendant's remainder adjacent to the new right-of-way line, which cost Willet estimated to be $9,000.00. To this $9,000.00, Willet added the value (at $11,000 per acre) of Wax's land that would be "lost" or used in the construction of the road, assuming a 40 foot wide roadway right-of-way, or $7,590 for the .69 acres he computed to be lost in the right-of-way. Even after the construction of the roadway, Willet concluded that the portion of the remainder land after deducting the roadway (6.374 acres) would suffer a reduction in value of about $2,000 per acre, or an additional $12,672.00. Thus Willet found severance damage to be the sum of the road construction cost ($9,000), plus the value of the land lost or used in the right-of-way ($7,590), plus the reduction in value of the acreage in the remainder after deducting the road ($12,672) for a total severance damage of $29,262.00.
"Although Mr. Willet had found $29,262 in severance damages in his first appraisal, no severance damages were deposited in the Registry of the Court. Although it is customary for both appraisers engaged by the Highway Department to sign the Certificate of Estimate of Just Compensation annexed to the petition, in this instance, Mr. Willet did not sign this certificate, but Mr. *839 Beck, review appraiser for the Highway Department, signed this certificate together with Mr. Deano, and both of them certified to no severance damages. Mr. Beck testified that this was one of the first times in his recollection that one of the appraisers engaged by the Highway Department did not sign this certificate.
"Mr. Patecek found severance damages of $43,470.32, and Mr. Lejeune found severance damage of $38,000.00. Both of them computed the severance damage much as Willet did in his first appraisal by determining the cost to construct a roadway along the approximate 755 foot frontage on the new right-of-way line of U.S. 190, and by adding to this the value of the land lost or used in the roadway right-of-way. Mr. Patecek and Mr. Lejeune figured a 60 foot wide strip that would be lost or used as the right-of-way for the road, whereas Willet used only a 40 foot wide strip.
"The Court takes note of the fact that the street minimum under the Parish Subdivision Regulatory Ordinance is 60 feet, and the Court further takes note of the fact that the strip of land on which the Highway Department will construct a frontage or service road directly across the highway from the Wax property is in excess of 100 feet wide from control of access line to right-of-way line in accordance with the Right-of-Way Maps and Construction Plans submitted in evidence.
"Both Patacek and Lejeune used a 60 foot wide roadway and both concluded that the value of the land lost or used in the road (about 45,400 sq. ft.) would be 50¢ per square foot, or $22,700.00. However, using different types of road construction, Patecek concluded that the cost of construction of the road would be $20,770.32, whereas Lejeune concluded that the cost of the construction of the road would be $15,281.00.
"Mr. Garon a contractor called by the defendant, testified that the cost of construction of the road contemplated by Willet, Lejeune and Patecek is $15,537.00.
"The preponderance of the evidence, shows that the method of computing severance damage used by Lejeune, Patecek and Willet in his first appraisal, is the proper method of computing severance damages.
"The Court finds severance damages to defendant's land remaining after the taking in this proceeding in the total amount of $31,579.60, consisting of $15,281 being the construction cost of the road found by Lejeune, plus $16,298.60 for the land lost or used in the road right-of-way. The latter figure represents the land to be used in a 60 foot wide road right-of-way for the approximate 755 feet of frontage after the taking, or 45,400 square feet of land to be used in the roadway. The Court also finds that the unit value of the land used in the roadway is the same as the before value of the entire tract, namely 35.9¢ per square foot, or $16,298.60 for the 45,400 square feet of land necessary for the roadway.
"It is this Court's finding that a well informed buyer would pay $31,579.60 less for the Wax remainder after the taking in this proceeding because of the necessity of building the new roadway."
Defendant Wax appealed the award of severance damages only with regard to the failure of the trial court to include a time adjustment for price increases for the part used or lost in the roadway. For the reasons stated above, under "Value of the Part Taken", we find no manifest error in the decision on this point.
Plaintiff, however, has raised several issues in arguing for deletion of any award for severance damages in this suit. These *840 objections fall primarily into two areas: (1) First, that the increased value to the Wax remainder as a result of the highway construction more than offsets any loss which would justify severance damages; and (2) Second, that use of the "cost to cure" method of awarding damages in order to allow for construction of an access road to the Wax remainder is not justified under the facts of this case.
Plaintiff's first contention is based on use of the property for commercial purposes. As stated earlier, all appraisers agreed that the highest and best use of the Wax tract was commercial. However, we agree with the trial judge that plaintiff's analysis of this point is not acceptable. Specifically, the trial judge found that the severely reduced front footage on the Wax tract and the lack of a frontage road in the northwest quadrant of the highway intersection combined to diminish the value of the Wax remainder for use for commercial purposes. The evidence clearly supports this finding.
The second attack by plaintiff on the award of severance damages concerns the trial court's allowance of damages to "cure" the access to U.S. 190 which was lost to the Wax remainder as a result of the expropriation.
As stated in State, Department of Highways v. Neyrey, 260 So.2d 739 (La.App. 4 Cir. 1972), the usual method of determining severance damages is the "before and after" test, but in considering applicability of the "cost to cure" method of determining severance damages, the Court said:
"However, under certain exceptional circumstances the `before and after test' will not adequately compensate the owner for his damage and the courts will resort to the `cost to cure' method of computation, not for purpose of restoration, but to gauge the diminution in market value as would be reflected in a lower purchase price that a well-informed buyer would be willing to pay. The case of State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969), stands for the proposition that the `cost to cure' concept should be used in assessing severance damages only in most exceptional situations ..."
". . . The rationale justifying this method of computation is that a well-informed buyer would pay less than market value for the property by a sum equal to the amount of the award, this being the cost necessary to overcome the deficiency created by the taking, i.e., the loss of access. Thus, it is only in this way that the owner of the property is fully and fairly compensated for his loss."
The trial court in the instant case concluded that:
". . . a well informed buyer would pay $31,579.60 less for the Wax remainder after the taking in this proceeding because of the necessity of building the new roadway."
We agree with the trial court that the facts of this case necessitate the use of the "cost to cure" method as the only equitable way by which to measure the defendant's losses. Accordingly, the award of severance damages decided below will be upheld.
For the foregoing reasons, the judgment of the trial court is affirmed.
All costs permitted by law incurred in the trial court are assessed against the plaintiff. The costs of this appeal are to be assessed one-half to the plaintiff to the extent permitted by law and the remaining one-half to the defendant.
Affirmed.