THERIOT, J.
lain this case involving an expropriation proceeding, the defendants appeal a trial court judgment setting the amount of just compensation for the property and awarding some, but not all, requested expert witness fees. The plaintiff appeals the award of attorney fees and expert witness fees to defendants. We affirm.
FACTS AND PROCEDURAL HISTORY
On July 8, 2005, the State of Louisiana through the Department of Transportation and Development (“DOTD”) filed a petition for expropriation in accordance with La. R.S. 48:442, in which it sought to expropriate a portion of a larger tract of property owned by defendants, James and Shirley Munson, for highway purposes. An Order of Expropriation was signed by the court on July 13, 2005. Prior to the expropriation, the Munsons owned a total of 14.54 acres on the southeast side of Louisiana State Highway 61 and operated *431 a bed and breakfast, plant nursery, and gift shop (“Stillwater Farms”) on the property. The just compensation for the full ownership of the expropriated portion of the Munsons’ property (approximately 1.472 acres) was estimated to be $143,654.00. DOTD deposited that amount in the registry of the court on July 15, 2005, and on November 2, 2005, an order was signed allowing the Munsons to withdraw that deposit from the registry of the court, without prejudice to their right to contest the issue of the amount of just compensation.
On July 6, 2006, the Munsons filed an answer and reconventional demand to DOTD’s petition for expropriation, alleging in their reconventional demand that the amount of just compensation offered by DOTD was inadequate to compensate them for the value of the property |staken. The Munsons also requested attorney fees in accordance with La. R.S. 48:453(E) and recovery of expert witness fees.
A jury trial was held on May 1 and 2, 2013, during which both the Munsons and DOTD offered expert testimony regarding the amount of just compensation. Additionally, at the Munsons’ request and over DOTD’s objection, the jury visited the Munson property to view the property as it existed after expropriation. The jury found that the just compensation due to the Munsons for the expropriation of their property was $148,640.00. The jury found that the remainder of the Munsons’ property was not damaged by the expropriation, and further found that the Munsons did not suffer any other pecuniary, financial, or economic loss as a result of the expropriation.- After a hearing on the Munsons’ request for attorney fees, costs, and expert witness fees, the trial court rendered a judgment on November 26, 2013 in accordance with the jury verdict and further ordering that DOTD pay the Munsons legal interest on the difference between the just compensation award and the deposited amount, plus attorney’s fees of $1,246.50, court costs, and expert witness fees of $7,112.46. Both the Munsons and DOTD appealed.
ASSIGNMENTS OF ERROR:
. The Munsons appealed devolutively, assigning the following trial court errors:
1. The jury awarded an insufficient ‘ sum for the value of the expropriated land.
2. The jury awarded no severance damages.
3. The jury awarded no “other damages.”
4. The Court denied expert witness - fees to three expert witnesses.
|4DOTD appealed suspensively, arguing that the trial court abused its discretion in awarding attorney’s fees, court costs, and expert costs totaling $13,108.05 to the Munsons when they were not the prevailing party.
DISCUSSION
Louisiana Constitution Article I, § 4(B) provides, in pertinent part:
(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit....
(5) In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner .shall be compensated to the full extent of his loss.
Additionally, La. R.S. 48:453 provides, in pertinent part:
A. The measure of compensation for the property expropriated is determined *432 as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.
B. The measure of damages, if any, to the defendant’s remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
C. The owner shall be compensated to the full extent of his loss.
Thus, a landowner whose property is expropriated by the state is to be compensated so that he remains in an equivalent financial position to that which he enjoyed before the taking. State, Dept. of Transp. & Development v. Dietrich, 555 So.2d 1355, 1358 (La.1990). The burden of proof on the property owner in an expropriation case is to establish his claims by a reasonable preponderance of the evidence; speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment. State, Dept. of Transp. & Develop. v. Manuel, 93-0269, p. 3 (La.App. 3rd Cir.2/9/94), 640 So.2d 299, 301, writ denied, 94-0542 (La.4/29/94), 641 So.2d 203. (quoting State, Dept. of Transp. & Develop. v. Jacobs, 491 So.2d 138 (La.App. 3rd Cir.1986), writ denied, 496 So.2d 331 (La.1986))
Where the landowner challenges the amount DOTD deposits as just compensation for an expropriation, a greater value must be proven by a preponderance of the evidence. State, Dept. of Transp. & Develop. v. Restructure Partners, L.L.C., 07-1745, p. 7 (La.App. 1st Cir.3/26/08), 985 So.2d 212, 220, writ denied, 08-1269 (La.9/19/08), 992 So.2d 937. The question of what damages will appropriately compensate the landowner is one of fact. Such a determination is necessarily dependent on evidence presented by expert witnesses; however, the factfinder is not obligated to accept an expert’s opinion in expropriation cases, since those opinions are not binding and are merely advisory in nature. Id. In an expropriation proceeding, a factfinder’s factual determinations as to value of property and entitlement to any other types of damages will not be disturbed on review in the absence of manifest error. West Jefferson Levee Dist. v. Coast Quality Const. Corp., 93-1718, p. 23 (La.5/23/94), 640 So.2d 1258, 1277, cert. denied sub nom, 513 U.S. 1083, 115 S.Ct. 736, 130 L.Ed.2d 639 (1995). Likewise, where the testimony of the experts and witnesses is contradictory and where the trier of fact decides to give more or less weight to the testimony of certain individuals, those findings cannot be overturned unless manifest error appears in the record. State Through Dept. of Highways v. McPherson, 261 La. 116, 133, 259 So.2d 33, 39 (1972). Those factual findings that do not directly involve the valuation of the property or the credibility .of the appraisers are also entitled to deference. West Jefferson Levee Dist, 93-1718 at p. 23, 640 So.2d at 1277.
 In Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978), the Louisiana Supreme Court set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding, and (2) the appellate court must further determine that the record establishes the finding is not clearly wrong or manifestly erroneous. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. *433 ESCO, 549 So.2d 840, 844 (La.1989). Under the manifest error-clearly wrong standard, the reviewing court does not decide whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).

Just Compensation

On appeal, the Munsons argue that the jury abused its discretion in using DOTD’s expert’s estimate of the value of the land taken, rather than their own expert. George Platt testified on behalf of DOTD as an expert in real estate appraisals. Mr. Platt testified that he performed a “before and after” appraisal of the Mun-son property for the expropriation. Mr. Platt visited the property and the surrounding area with a cost consultant to determine the highest and best use of the property and to determine the demand or lack thereof for the property in its present use or its proposed use. He also investigated sales in the area and evaluated the condition of the improvements on the property. Mr. Platt testified that approximately 10 acres of the property was zoned commercial, and the remaining approximately 4 acres was zoned residential-agricultural. He determined the |7highest and best use of the property, both before and after the expropriation, to be either a combination of highway commercial and rural residential or purely rural residential. Since a portion of the Munsons’ property was zoned commercial, and they had a commercial enterprise on the property at one time, Mr. Platt considered its use for a commercial enterprise in performing his appraisal. However, he noted that although commercial property is usually more valuable than residential property if there is a demand for it in the market, the Munsons’ property is in an area with almost no demand for commercial property because the portion of Highway 61 on which the Munsons’ property is located is not heavily travelled. Mr. Platt estimated that the entire 14.52 acre tract with improvements was worth $410,000.00 at the time of the expropriation, and the remainder after the expropriation was worth $261,360.00. Therefore, he concluded that the value of the land and improvements taken was $148,640.00. Mr. Platt testified that it was his opinion that the remainder of the property left after the expropriation did not change in value after the expropriation; therefore, he did not believe that severance damages were appropriate.
Although the Munsons presented the testimony of their own expert real estate appraiser, Kermit Williams, who estimated just compensation for the expropriated property to be $303,215.00,[1] plus severance damages of $49,710.00, the jury was free to weigh the contradictory testimony of the various experts and accept or reject, in whole or in part, the testimony of those experts. We cannot say that the jury’s decision to accept Mr. Platt’s opinion as to the value of just compensation and reject another expert’s ^opinion is manifestly erroneous or clearly wrong. This assignment of error lacks merit.

Severance Damages

Severance damages may be awarded in expropriation cases when appropriate or properly proven. Restructure Partners, L.L.C., 07-1745 at p. 7, 985 So.2d at 221. The term “severance damages” describes those compensable damages that flow from the partial expropriation of a tract of land, i.e., the difference between the value of the remaining property before *434 and after the taking. Id. The landowner has the burden of proving severance damages with legal certainty by a preponderance of the evidence. The informed and reasoned opinion of an expert, corroborated by facts in the record, may sufficiently prove a severance damage loss, particularly where it is accepted by the trier of fact. Id. The most commonly accepted and used approach for determining the amount of severance damages is the “before and after” method of appraisal. However, under certain exceptional circumstances the “before and after test” will not adequately compensate the owner for his damage and the courts will resort to the “cost-to-cure” method of computation, not for the purpose of restoration, but to gauge the diminution in market value as would be reflected in a lower purchase price that a well-informed buyer would be willing to pay. Id., at pp. 7-8, 985 So.2d at 221. It is well settled that “cost-to-cure” is a proper measure of severance damages only when it does in fact place the landowner in as good a position as he enjoyed prior to the taking, and is less than the decrease in market value otherwise caused; or where the reduction in market value approach will not adequately compensate the landowner. Id., at p. 8, 985 So.2d at 221.
lain this case, the jury was presented with conflicting 'expert testimony on the issue of severance damages. Mr. Platt testified that he did not believe any severance damages were due because he did not find any difference between the value of the remaining property before and after the taking. Despite the fact that part of the property was zoned commercial and there were commercial structures on the property prior to the expropriation, Mr. Platt explained that it “doesn’t mean the market is going to buy into it.” He testified that “[t]he property still has about the same utility as before. It has a little more frontage, and it’s still a desirable piece of land in my opinion.” On the other hand, Mr. Williams testified that the Munsons sustained $49,710.00 in severance damages because “[w]hat wasn’t taken was damaged ... because it cannot be used effectively after.” Mr. Williams testified that the remainder of the property was damaged because after the expropriation, it could no longer be used as it was before; ie., as a “successful retail sales outlet offering gifts for sale and nursery plants as well as bed and breakfast accommodations in an active part of West Feliciana Parish.” However, when asked for the basis for his conclusion that the Munsons’ commercial operation was a success, Mr. Williams testified that “it was there and it was operating. Of course, I believe it had ceased operations, but that was pretty much my conclusion, that it was successful. And, of course, all success isn’t measured in money. There’s a lot of satisfaction in doing certain things.” Despite the fact that Mr. Munson considered Stillwater Farms to be more than just a hobby, it operated at a loss most years. In awarding no severance damages for the expropriation, the jury obviously accepted Mr. Platt’s opinion that the remainder of the property was not damaged by the expropriation of a portion. Reviewing the |inevidence before the jury, we cannot say that their conclusion is manifestly erroneous.

Other Damages

Finally, the Munsons argue that the jury erred in failing to award “other” damages for their loss of the hope of making a profit. The Munsons argued that the jury abused its discretion in failing to award the cost of site preparation to construct a level area for a new business venture on the remaining land.
At trial, DOTD offered the testimony of Michael Daigle, an expert certified public accountant specializing in business finan *435 cial valuations and forensic accounting, who concluded that rather than a commercial business enterprise, Stillwater Farms was what the IRS would refer to as a “hobby activity.” Mr. Daigle testified that the Munsons’ 2000 income tax return showed that Stillwater Farms had a $130,000.00 net operating loss from 1995— 2000, averaging out to about a $25,000.00 loss per year. Mr. Daigle disagreed with Mr. Munson that business was picking up in the final years, and Stillwater Farms was beginning to turn a profit; rather, Mr. Daigle attributed the profit in the later years to the fact that Mr. Munson was winding down the businesses to prepare to close and was no longer buying new inventory. Reviewing the Munsons’ tax returns, Mr. Daigle explained that the only reason Stillwater Farms was able to stay in business was because the Munsons had other income sources (Mrs. Munson was employed as a registered nurse at Terre-bonne General Medical Center making approximately $55,000.00 per year, and both she and Mr. Munson received retirement benefits - and social security). Mr. Daigle concluded that “there are no long term or short term business losses that are the result of DOTD expropriations and these folks have not proven any commercial h-ibusiness damages. They’ve yet to establish that there is, in fact, really a commercial business.”
In finding that the Munsons suffered no other pecuniary, financial, or economic loss as a result of the expropriation, the jury chose to believe the expert opinion of Mr. Daigle that the Munsons suffered no losses or commercial business damages from the expropriation. Since they suffered no other pecuniary, financial, or economic loss as a result of the expropriation, the Munsons are not entitled to damages to pay for site preparation to construct a new business enterprise. From a review of the evidence before the jury, we cannot say that the jury was manifestly erroneous in so finding. This assignment of error also lacks merit.

Attorney Fees

In its appeal, DOTD argues that the trial court abused its discretion in awarding attorney fees to the Munsons because they did not prevail at trial.
Louisiana Revised Statutes 48:453(E) provides that reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment; however, the amount awarded shall in no event exceed twenty-five percent of the difference between the award and the amount deposited. The award of attorney fees in an expropriation case is not automatic and is subject to the abuse of discretion standard. See City of Shreveport v. Noel Estate, Inc., 41,148, p. 29 (La.App.2d Cir.9/27/06), 941 So.2d 66, 85, writ denied, 06-2774 (La.1/26/07), 948 So.2d 171. Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal | ^knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. State, Dept. of Transp. & Develop. v. Williamson, 597 So.2d 439, 442 (La.1992).
DOTD argues on appeal that the Mun-sons did not prevail at trial because the jury accepted the amount of just compensation suggested by DOTD’s expert witness, Mr. Platt. The trial court rejected this argument, and awarded attorney fees *436 because the Munsons were awarded an amount in just compensation for their land which was greater than the amount deposited by DOTD in the registry of the court. The trial court awarded attorney fees within the limits prescribed by the statute, and we cannot say that this was an abuse of discretion. Despite the fact that the Munsons did not receive the entire amount they sought in just compensation, they disputed the amount offered by DOTD and were ultimately awarded a larger amount. This assignment of error has no merit.

Expert Witness Fees

Both parties appeal the trial court’s award of expert witness fees. DOTD’s argument, that the Munsons should not be entitled to expert witness fees because they did not prevail at trial, is rejected for the same reason that we reject their appeal of the attorney fees award. The Munsons argue on appeal that the trial court erred in failing to award the fees of three expert witnesses: Billy Prochaska, Charles Wilson, and Rickey Guillory, whose testimony developed the Munsons’ “other damages” claim. Mr. Prochaska was an expert in geotechnical engineering and civil engineering who testified as to the engineering that would be required to provide the Munsons with an equivalent working area for their nursery business. Mr. Wilson was an expert land surveyor who performed a topographical survey of the l1sproperty in conjunction with Mr. Prochaska’s engineering work. Mr. Guillory was a contractor[2] who met with Mr. Munson to determine the cost of restoring the property in accordance with Mr. Prochaska’s plans.
In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witnesses retained by the landowner to assist him in obtaining his just compensation. State, Dept. of Transp. & Develop. v. Nelken, 628 So.2d 1279, 1283 (La.App. 3rd Cir.1993), writ denied, 94-0253 (La.3/18/94), 634 So.2d 860. The fixing of expert witness fees is largely within the sound discretion of the trial court, and the trial court’s fixing thereof will not be disturbed in the absence of abuse of discretion. In fixing expert witness fees, each case must turn on its own peculiar facts and circumstances. There are, however, certain factors that can be used in fixing such fees, such as the expertise of the expert, the helpfulness of the expert’s report and testimony to the trial court, the time spent in the preparation of the report, the time spent in testifying as an expert witness, and awards to experts in similar cases. The agreement between the landowner and the appraiser may be used as a factor in fixing the fee, but such an agreement cannot be the sole criterion used by the trial court in. fixing the expert’s fee. State of Louisiana, Through the Department of Highways v. Salles, 387 So.2d 1278, 1286-87 (La.App. 1st Cir.1980), writ refused, 393 So.2d 744 (La.1980). The assessment of a fee for an expert witness must be based on the relative usefulness of his testimony. See Nelken, 628 So.2d at 1283.
The Munsons’ claim for “other damages” relating to the cost to restore the land for business use was rejected by the jury and by this court on review. Thus, Mr. Prochaska, Mr. Wilson, and Mr. Guillory’s testimony was not useful to the jury in determining the award to the Munsons. Therefore, the trial court’s decision to award no expert witness fees to the Mun-sons for these witnesses’ testimony was not an abuse of discretion. See Nelken, 628 So.2d at 1283. This assignment of error is without merit.
*437 CONCLUSION
For the reasons set forth herein, the trial court judgment is affirmed. Costs of this appeal, in the amount of $9,966.82, are to be shared equally by the parties.
AFFIRMED.

.' Mr. Williams valued the land and improvements taken at $217,370.00 and the depreciation damage to the land and improvements taken at $85,845.00.

. Mr. Guillory was not tendered as an expert in any field.