GUIDRY, J.
|gIn this expropriation case, the property owners appeal the amount of just compensation awarded by a jury.
FACTS AND PROCEDURAL HISTORY
On May 8, 2012, the Terrebonne Parish Consolidated Government (“TPCG”) filed a petition against Henry J. Richard and Sharon F. Richard seeking to expropriate a portion of a tract of land they owned for the expansion of approximately 0.91 miles of Hollywood Road in Houma, Louisiana, from a two-lane highway to a four-lane highway. In the petition, the TPCG alleged that it was necessary “to expropriate in full ownership the ... described Property, free and clear of encumbrances, together with all of the improvements situated wholly or partially thereon, subject to the mineral reservation” in favor of the Richards. Accordingly, the TPCG prayed that an order be issued directing it to deposit the sum of $434,624.00 into the registry of the court as just compensation and that full ownership of the expropriated property be adjudicated to the TPCG for roadway purposes as of the time of the deposit. The TPCG also prayed for an order directing the Richards to surrender possession of the property to the TPCG. An order granting the relief as prayed for by the TPCG was signed by the trial court on May 10,2012.[1]
The Richards answered the expropriation petition denying that just and fair compensation for the expropriation had not been paid and additionally asserted affirmative defenses and a reconventional demand requesting additional compensation for the costs of relocating the business operated on the expropriated property and for severance, inconvenience, and any other damages incurred as a result of the expropriation.[2] Also in response to the expropriation petition, ^Richard’s Restaurant Supply, Inc. filed a petition to intervene in the proceedings as the lessee of the property being expropriated. In the petition for intervention, Richard’s Restaurant Supply alleged that the TPCG failed to join the business in the expropriation proceeding and had not offered or paid just compensation to the business. The trial court allowed the intervention by an order signed January 15, 2013. Richard’s Restaurant Supply later voluntarily dismissed its claims against the TPCG for “economic/business losses, lost profits, loss of goodwill, loss of use, inconvenience, and loss of enjoyment” with prejudice. Thus, the sole claim presented by the tenant business was for the moving and storage of merchandise and items in the restaurant supply store.
Shortly before the trial in this matter was to commence, in a letter dated November 24, 2014, the TPCG presented an additional offer to the Richards to “lessen any negative impact which may have been caused to [them] or Richardfs] Restaurant Supply, Inc. by the Hollywood Road Wid *687 ening Project.” The letter outlined an offer whereby.a permanent parking servitude would be granted to the Richards to allow angled parking on a portion of the property that had been expropriated by the TPCG. According to the letter, the offer of the permanent parking servitude would reduce the impact of the expropriation on parking by causing the loss of only three spaces out of the eight spaces that were originally available in the portion of the parking lot that fronted Hollywood Road. Attached to the letter was a copy of the parking servitude, a copy of Ordinance No. 8482 (wherein the Terrebonne Parish Council authorized the parish president to execute the servitude agreement), a copy of a parking plan showing the angled parking in the proposed parking servitude, a parish'building permit issued to the Richards dated November 20, 2014 (authorizing the Richards to construct concrete parking on the parking servitude), and a letter of no objection from the parish public works 14director. By a letter dated January 20, 2015, the ' Richards rejected the offer of the permanent parking servitude.
A five-day jury trial in this matter commenced on January 26, 2015, following which the jury found by an unanimous verdict that $50,041.00 was just compensation, for the portion of property and improvements expropriated by the TPCG, that $303,883.00 was just compensation for any severance damages' (including cost to cure) to the property remaining after the expropriation, and that $80,700.00 was just compensation for any additional loss or damage tó the Richards’ property interests as a result of the widening project, which amounted to $434,624.00 as the total'sum found by the jury to be the just compensation owed. This sum equaled the amount the TPCG initially deposited in the registry of the court as just compensation for the expropriation. Consequently, on February 19, 2015, the trial court signed a judgment in favor of the TPCG and against the Richards and Richard’s Restaurant Supply, dismissing their claims against the TPCG with prejudice. Thereafter, the Richards and Richard’s Restaurant Supply (collectively, “the Richards”) sought and were granted a devolutive appeal from the February 19, 2015 judgment.
ASSIGNMENTS OF ERROR
In this appeal, the Richards allege that the following errors were committed in the proceedings below:
I. The jury’s award of .severance damages (including cost to cure) is not supported by any evidence in the record, and is therefore manifestly erroneous..
II. The trial court erred as a matter of law and abused its discretion in admitting evidence relating to the negotiation, permissibility, and hypothetical construction of a proposed (and rejected) offer of servitude in 2014.
III. The jury committed manifest error by ignoring the only uncontradict-ed record evidence relating to the actual cost to construct the cure after awarding moving expenses 'that would be incurred only due to the construction of [their expert’s | ¿proposed] cure, where TPCG offered no support for its deposit or severance damages.
DISCUSSION
According to the Louisiana, Constitution, “[ejvery person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.” La. Const, art. 1, § 4(A).- Never *688 theless, even in the exercise of its police power, private property may be taken by political subdivisions only for public purposes and with just compensation. La. Const, art.. 1, § 4(B)(1). When private property is so taken, our state constitution provides:
In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any' other damages actually incurred by the owner because of the expropriation.
La. Const. art. 1, § 4(B)(5). It has been held that the intent of the provision to compensate the owner “to the full extent of his loss” permits the owner to remain in equivalent financial circumstances after the taking and be put in as good a position pecuniarily as he would have been had his property not been taken. State, Department of Highways v. Constant, 369 So.2d 699, 701 (La.1979).
In their first assignment of error, the Richards contend that the jury’s award of severance damages is manifestly erroneous because none of the competent evidence in the record before us supports the precise sum awarded. While it is true, that none of the experts offered by the parties in this matter gave an opinion suggesting the precise amount awarded, we cannot say there is no. evidence in the record to support the jury’s award.
To calculate the amount of damages to be paid to. a property owner as severance damages, La. R.S. 48:453(B) and (C) provide:
|fiB. The measure of damages, if any, to the defendant’s remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
C. The owner shall be compensated to the full extent of his loss.
Damages to the remaining property are sometimes characterized as “severance damages,” á term which describes the compensable damages that flow from the partial expropriation of a tract of land. City of Baton Rouge v. Nelson, 14-0442, p. 8 (La.App. 1st Cir.3/6/15), 166 So.3d 311, 316. Severance damages are the damages to the remainder of a tract of land resulting from a partial taking, and are ordinarily calculated as the difference between the market value of the remaining property immediately before and immediately after the taking. State through Department of Highways v. Roland J. Robert Distributor, Inc., 405 So.2d 1174, 1177 (La.App. 1st Cir.1981). Severance damages are awarded to compensate a property owner for a proven decrease in the value of that part of his property that remains after a taking. State, Department of Transportation & Development v. Everett, 45,337, p. 2 (La.App.2d Cir.8/25/10), 47 So.3d 631, 632, writ denied, 10-2216 (La.11/19/10), 49 So.3d 388.
The question of what damages will appropriately compensate the landowner is one of fact. Such a determination is necessarily dependent on evidence presented by expert witnesses; however, the factfinder is not obligated:to accept an expert’s opinion in expropriation cases, since those opinions are .not binding and are merely advisory in nature. State, Department of Transportation and Development v. Restructure Partners, L.L.C., 07-1745, p. 7 (La.App. 1st Cir.3/26/08), 985 So.2d 212, *689 220, writ denied, 08-1269 (La.9/19/08), 992 So.2d 937.
In this case, the appraisals considered by the TPCG for determining the amount of just compensation that was deposited in the registry of the court at the time of the taking were reviewed by David L. Pour-ciau, the real estate chief |7appraiser with the Louisiana Department of Transportation and Development (DOTD).[3] Poureiau was called as a witness by the Richards and accepted by the trial court as an expert real estate appraiser. Poureiau testified regarding his role in reviewing the appraisals and his recommendation of just compensation based on those appraisals. A copy of Pourciau’s October 11, 2011 appraisal review sheet was offered into evidence in conjunction with his testimony.
Poureiau testified, and in the appraisal review sheet he certified, that he reviewed the appraisals secured by the TPCG under DOTD standards. According to the appraisal review sheet, the appraisal by William H. Elliott valued the land expropriated at $37,526.00, iiriprovements at $5,400.00, and damages at $391,811.00, for a total recommended compensation of $434,737.00. The appraisal review sheet also shows a second appraisal by Roberto J. Aguilar that appraised the value of the land expropriated at $33,165.00, improvements at $10,184.00, and damages. at $245,754.00. Poureiau found both appraisals to be . “COMPLETE, ACCURATE AND REASONABLE,” but concluded that he could agree with Elliott’s severance estimate, which was the higher of the two appraisals. He testified that the suggested cure in both appraisals included some demolition of the building as, the proposed method of determining the impact of the taking on the property, and he agreed with-that chosen methodology. As he explained:
But whereas the appraisers before the taking are doing an analysis to determine the impact to the remainder, their tool is to do that' cut and reface study— Theré’s'a lot of assumptions bn their part to come up with that. It isn’t something that they’re saying it has to be done or it should be done, will be done, must be done. This is their idea of the impact to the remaining.
| sPourciau acknowledged that appraising is not an exact science and agreed that it is perfectly reasonable" that three appraisers will look at one project and come up with three different numbers."
The jury’s total award in this case was equal to the offer of just compensation that the TPCG deposited in the registry of the court at the time of the taking,.which also happened to almost equal[4] the total amount of just compensation estimated in the Elliott appraisal recommended by Poureiau. But none of the individual amounts awarded by the jury are the same as those estimated by Elliott. Instead, the jury’s award of $50,041.00 as compensation *690 for the land expropriated was the same amount determined by Brian LaRose, the expert real estate appraiser offered by the Richards. Additionally, the jury’s award of $80,700,00 for “any additional loss or damage” equaled the sum suggested by John Williams, the Richards’ expert in the fields of architecture and cost estimating, as being a reasonable cost for the moving and temporary storage of merchandise and items from the business for a period of up to six months. The remaining portion of the jury’s award, in the amount of $803,883.00, is the amount the jury found the Richards were entitled to as severance damages. As argued by the Richards, the sum awarded as severance damages is not equal to any amount suggested by any of the appraisers or experts whose estimates were offered at trial.
In an expropriation proceeding, a factfinder’s factual determinations as to the value of property and entitlement to other types of damages are subject to the manifest error standard of review, while the amount of damages awarded is subject to the abuse of discretion standard of review. The jury is not required to accept or reject the testimony of any particular witness, but may give whatever weight it considers appropriate to the testimony of any and all witnesses "in making its factual determination of the value of the property taken. The jury may even reach a conclusion that does not coincide with the testimony of any witness. Restructure Partners, L.L.C., 07-1745 at p. 8, 985 So.2d at 221.
While the jury in the instant matter chose to render awards for the expropriated land and for “any additional loss or damage” in amounts that exactly coincide with estimates calculated by the Richards’ experts, it was clearly within the jury’s province to choose not to adopt the estimate of any expert or appraiser in making an award of severance damages. See State, Department of Transportation and Development v. Munson, 14-0492, p. 7 (La.App. 1st Cir.1/21/15), 169 So.3d 426, 433, writ denied, 15-0299 (La.4/24/15), 169 So.3d 358 (“the jury [is] free to weigh the contradictory testimony of the various experts and accept or reject, in whole or in part, the testimony of those experts.” (Emphasis added)). Moreover, while the jury’s award for severance damages is not equal to any of the amounts suggested by the appraisers and other experts presented in this case, the amount awarded does fall within the range of amounts suggested to the jury.
Additionally, while the Richards’ exports, Williams and LaRose, were quite skeptical of the cut and reface cure proposed by both Elliott and Aguilar as part of their assessment of severance damages in their appraisals, the jury still had before it the testimony of Pourciau who found those appraisals to be “COMPLETE, ACCURATE AND REASONABLE.”[5] As *691 such, we cannot say that the amount of severance damages awarded by jury was an abuse its discretion.
| mConsistent with our finding that there was sufficient evidence presented to the jury to support the amount of severance damages awarded, we likewise cannot say that the jury erred in awarding the Richards $80,700.00.00 for “any additional loss or damage.” Although this element of the jury’s award was not expressly identified as an award for moving and storage expenses, we agree with the 'Richards’ assertion in their third assignment of error that it could reasonably be inferred that the award was for that purpose, since the award was for the exact same amount as quoted by Moosa Movers for providing moving and storage services. So to the extent that we have found that it was reasonable for the jury to consider and rely on the appraisals of Elliott and Aguilar, both of which contained cures that proposed cutting and refacing the Richards’ building, we cannot agree with the Richards’. assertion that any moving and storage expense could only be incurred should the Richards construct the “camel-back” cure[6] proposed by their expert, Williams. The jury could have reasonably concluded that the same moving and storage expenses that would be incurred in implementing the “camelback” cut and reface cure proposed by Williams could equally be necessitated by the cut and |nreface cures proposed by Elliott and Aguilar in their proposals. Hence, we find no merit in the Richards’ third assignment of error.
Finally, in their second assignment of error, the Richards contend that the trial court erred in allowing the TPCG to present evidence regarding its proposal to grant a parking servitude over a portion of the land expropriated. The Richards contend that because the proposed parking servitude was not a part of the original plans for the road construction project, the proposal should not have been presented to the jury for consideration in determining the measure of damages to the, Richards’ remaining property. See La. R.S. 48:453(B). The TPCG, however, asserts that the proposed parking servitude was simply an alternative “cure.” As such, the TPCG argues that just as the “camelback” cure suggested by the Richards was first *692 developed and proposed in 2014, it was equally acceptable for evidence regarding the TPCG’s parking servitude cure, developed and proposed in 2014, to be considered by the jury.[7]
Whether the proposed parking servitude should be considered a modification of the project plans, or merely an alternative cure, relates directly to the determination of whether the trial court properly allowed evidence regarding the proposed parking servitude to be presented to the jury. As pointed out by the Richards, La. R.S. 48:453(B) requires that the measure of damages to the defendant’s remaining property be based on the feffects of the completion of the project in the manner proposed oí* planned. We disagree, however, with their assertion that the proposed parking servitude' amounts to a modification of the construction project as proposed or planned.
A1 Levron, the TPCG parish manager, testified that from the very beginning of the project, the intended width of the right-of-way for Hollywood Road was a |iatotaI of 100 feet, and as the roadway existed, the parish" already owned 60 feet. So the intent was to acquire approximately 20 feet on each side of the existing roadway for the road-widening project. Lev-ron explained that not all of the property acquired would be converted into additional paved roadway, but instead, some of the additional property acquired was necessary for the relocation of utilities in conjunction with the expansion of the roadway, As he explained, utilities were in the way of the new’travel lane and had to be moved out of the way, so the parish had to acquire rights to relocate the utilities. He testified that the project could not have been built without acquiring rights to the additional land and then relocating the utilities on that land. Even with the servitude, Levron testified that the utilities would be placed on the additional land purchased, and he stated that in September 2014, a portion of the parking lot for Richard’s Restaurant Supply was broken up for the installation.of a 20-inch waterline in the area of the proposed parking servitude.
At trial, it was established that the plans for the construction project were designed by Hartman Engineering, whereas the plans for the parking servitude offered to the Richards was designed by Providence/GSE based on drawings provided by E.A. Angelloz.[8] Providence/GSE was responsible for moving all of the utilities on the project — sewer, water, and gas — outside of the proposed roadway. Brian Breaud with Providence/GSE testified that Angelloz provided him with a drawing of the proposed parking servitude so that he could include it into his construction drawings to see if it fit, and it did.
The evidence presented regarding the parking servitude does not indicate that the' widening of Hollywood Road would be completed in the manner different 113from what was originally proposed or planned if the proposed parking servitude was executed. Instead, as indicated in the foregoing testimony, the proposed parking servitude was evaluated to determine *693 whether it would fit in with the original construction plans for the project. As previously discussed, the project plans required the portion of the Richards’ parking lot that was expropriated to be used for the relocation of utilities and that plan was not changed. Consistent, with that planned use of the expropriated land, the TPCG presented its 2014 parking servitude plan to allow the Richards to park on the expropriated portion once it completed its relocation of utilities in accordance with the project plans. Accordingly, we reject the Richards’ remaining assignment of error asserting that the trial court erred-in allowing the 2014 parking servitude proposal to be presented to the jury as the proposal was not a modification of. the project in the manner proposed or planned.
CONCLUSION
For the foregoing reasons, we find the record sufficiently supports the verdict of the jury in this expropriation proceeding, and we therefore affirm the judgment of the trial court. All costs of this'appeal are assessed to the appellants, Henry and Sharon Richard and Richard’s Restaurant Supply, Inc.
AFFIRMED.

. See La. R.S. 48:442-445

. See La. R.S. 48:450(B).

. At trial, Poureiau testified that although the road construction project was a parish project, the DOTD assisted with the project insofar as helping the TPCG set up the appraisal process and review the results. As he explained:
Our role really depends on the memorandum of understanding or the city/state agreement that defines what we’re supposed to do.
And apparently in this part, in this particular project, we were to assist in setting up the appraisals. This Parish was to hire the appraisers and then we were to review the appraisal reports themselves and recommend a compensation.

. The record shows that the actual total of just compensation estimated by Elliott was $434,737.00, but the total compensation rec-.bmmended by Pourciait, based on Elliott’s appraisal, was $434,624.00, which is $113.00 less than Elliott’s total amount.

. On appeal, the Richards point out that Pourciau did not evaluate whether the cut and reface cures proposed in the Elliott and Aguilar appraisals were compliant with all building, zoning, ADA, and fire safety requirements. However, Pourciau indicated that it was understood that Elliott and Aguilar could not propose a cure unless it was compliant with, governing regulations and requirements. He also testified that ‘‘[e]ven if the building did not comply in the before, if they analyze it in the after and there’s a cut and reface, whatever, they have to comply to any standards that are in place.”
The Richards also assert that the Elliott and Aguilar appraisals should have been discredited by the jury based on the failure of the TPCG to present those appraisers as witnesses at trial. See State, Department of Highways v. Mims, 336 So.2d 24, 27 (La.App. 3d Cir.), writ denied 339 So.2d 16 (La.1976). Such an adverse presumption arising from the "uncalled witness rule,” however, is rebuttable by the fact that a party need only put on enough *691 evidence to prove the case and when the witness is equally available to the opposing party. See JPS Equipment, LLC v. Cooper, 50,506, p. 9 (La.App.2d Cir.2/24/16), 188 So.3d 1106, 1111. In this case, as will be discussed later in the opinion, the TPCG clearly relied on and believed that the evidence it presented regarding its alternative cure of a parking servitude was sufficient to prove its case without the testimony of Elliott, Aguilar or even Pourciau, who also was not called by the TPCG, but instead was called by the Richards. Further, there has been no allegation or showing that the Richards were unable to call Elliott and Aguilar as witnesses, as they did with Pourciau.

. Richard’s Restaurant Supply is housed in a rectangular-shaped building with a comer entrance that faces the intersection of Corporate Drive and Hollywood Road. Proceeding from the front entrance, the building is comprised of a showroom, followed by an office area, and ends with a wárehouse at the back of the building. Additionally,- immediately above the office is a mezzanine or raised platform area where additional merchandise is stored and accessed using a forklift.
. The proposal to "cut and reface” the building refers to cutting off or removing several feet of the front of the building. As told to the jury, Elliott and Aguilar both proposed'such a "cut and reface” of the building in their appraisals. The "camelback” cure proposed by the Richards’ expert, Williams, also involved a cut and reface of the building as proposed by Elliott and Aguilar, but further involved converting the existing office space into showroom space, with the existing office space being moved to a second floor with a new mezzanine area, at a cost of $1,191,475.00.

. It should be pointed out that the estimates used in all of the proposed cures and appraisals presented to the jury were done using costs and values as of May 10, 2012, the date of the expropriation.

. Angelloz is a licensed, professional architect who was tendered by the TPCG and accepted by the court as an expert in the field of architecture and cost estimation, He was also the person the TPCG hired to document and provide an estimate of all the improvements on the Richards' property and to propose a possible cure for the parking. •