STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0656


CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE

VERSUS

GIOVANNI MUCCIACCIARO


Judgment Rendered: **MAY 2 5 2022**


Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number C551784, Section 21


Honorable Ronald R. Johnson, Judge Presiding


************


| | |
|---|---|
| Anderson O. Dotson, III<br>Leo J. D'Aubin<br>Gwendolyn K. Brown<br>William R. Aaron, II<br>Baton Rouge, LA | Counsel for Plaintiffs/Appellants,<br>City of Baton Rouge and Parish<br>of East Baton Rouge |
| Robert T. Talley<br>Baton Rouge, LA | Counsel for Defendant/Appellee,<br>Giovanni Mucciacciaro |


************


BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**WHIPPLE, C.J.**

In this expropriation matter, plaintiffs/defendants-in-reconvention, the City of Baton Rouge and Parish of East Baton Rouge (City/Parish), appeal the award ordered by the trial court in favor of defendant/plaintiff-in-reconvention, Giovanni Mucciacciaro, as just compensation for the expropriation of his property. Mr. Mucciacciaro answered the appeal, seeking an increase in the amount of costs awarded by the trial court. For the reasons that follow, we affirm in part, amend in part, and remand with instructions. Additionally, we grant the answer to appeal.

## FACTS AND PROCEDURAL HISTORY

On January 31, 2007, the City/Parish, acting pursuant to a Local Services Agreement and Resolution of the Metropolitan Council, filed a petition for expropriation seeking to acquire three separate parcels of land owned by Mr. Mucciacciaro for the expansion of South Sherwood Forest Boulevard at Interstate 12 in Baton Rouge, City/Parish project number 02-TL-US-0013.[1] The first parcel of land (Parcel 1-2) was the location of Mr. Mucciacciaro's restaurant, Pasta Garden, which the City/Parish sought to expropriate as a partial taking. Although the other two parcels of land were zoned for residential use, one was purportedly used as the office for the restaurant (Parcel 2-1) and was expropriated in full. The other parcel of land (Parcel 2-3) was a residential rental property owned by Mr. Mucciacciaro, which the City/Parish also sought to expropriate in part. On that same day, the trial court entered an order of expropriation, expropriating the three parcels, ordering the City/Parish to deposit the sum of $1,515,278.00 into the registry of the court, and further ordering Mr. Mucciacciaro to surrender the property to the City/Parish immediately upon the deposit of the estimated compensation into the registry of the court.

---

[1] Pursuant to LSA-R.S. 33:1321-1337, a political subdivision is entitled to utilize the "quick taking" procedure laid out in LSA-R.S. 48:441, *et seq.* City of Baton Rouge v. Nelson, 2014-0442 (La. App. 1st Cir. 3/6/15), 166 So. 3d 311, 313 n. 1.

2

The following day, February 1, 2007, the City/Parish deposited into the registry of the court the sum of $1,515,278.00 as just compensation. Of this total, $1,325,238.00 constituted just compensation for Parcel 1-2, $71,500.00 for Parcel 2-1, and $118,540.00 for Parcel 2-3. Shortly thereafter, Mr. Mucciacciaro withdrew the funds, but reserved all rights to determine any other compensation due to him for the expropriation.

On July 2, 2012, Mr. Mucciacciaro filed an answer and reconventional demand, seeking additional compensation for the expropriated properties and lost rental income from Parcel 2-3. After a bench trial on December 8-9, 2020,[2] the trial court took the matter under advisement and left the record open for the parties to submit proposed findings of fact and conclusions of law. Thereafter, on December 15, 2020, the trial court signed a judgment in favor of Mr. Mucciacciaro, awarding him: $3,669,143.00 as just compensation in addition to the $1,515,278.00 deposit made by the City/Parish; twenty-five percent attorney fees on the combined total of the award, plus interest; various expert fees totaling $33,375.00; expert deposition costs totaling $2,248.10; and all court costs, which were fixed at $1,436.88.[3]

The City/Parish then filed the instant appeal.[4] On appeal, the City/Parish contends that the trial court erred in:

(1) finding that the expropriated property was unique and indispensable, thereby awarding replacement cost without depreciation as just compensation;

---

[2] The bench trial was conducted by Judge Janice Clark.

[3] Judge Clark signed the judgment which was titled "Owner's Proposed Judgment" and was submitted by Mr. Mucciacciaro in conjunction with his post-trial memorandum and proposed findings of fact, conclusions of law, and reasons for judgment. Although the trial court signed Mr. Mucciacciaro's proposed judgment, the trial court did not sign his proposed findings of fact, conclusions of law, and reasons for judgment.

[4] Judge Ronald Johnson signed the order of appeal herein.

(2) crediting the owner's witnesses despite the fact that their valuation methods were in clear conflict with well-established legal principles and professional methodology;

(3) rendering an excessive award to the owner;

(4) excluding relevant portions of the City/Parish's expert's testimony; and

(5) awarding excessive attorney fees.

Mr. Mucciacciaro answered the appeal, contending that the costs awarded by the trial court in its judgment are "incomplete, and therefore inadequate" and that the judgment should be modified to award "the full and complete costs...together with legal interest thereon" in conformity with LSA-R.S. 13:5112.

## LEGAL PRECEPTS

According to the Louisiana Constitution, "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power." La. Const. art. 1, § 4(A). Nevertheless, even in the exercise of its police power, private property may be taken by political subdivisions only for public purposes and with just compensation. La. Const. art. 1, § 4(B)(1). With regard to the taking of private property, the Louisiana Constitution provides:

> In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation.

La. Const. art. 1, § 4(B)(5). The intent of the provision to compensate the owner "to the full extent of his loss" is to permit the owner to remain in equivalent financial circumstances after the taking and be put in as good a position pecuniarily as he would have been had his property not been taken. State, Dept. of Hwys. v.

4

Constant, 369 So. 2d 699, 701 (La. 1979); Terrebonne Parish Consol. Gov't. v. Richard, 2015-0728 (La. App. 1st Cir. 6/2/16), 196 So. 3d 684, 688, writ denied, 2016-1237 (La. 10/17/16), 207 So. 3d 1065.

The burden of proof on the property owner in an expropriation case is to establish his claims by a reasonable preponderance of the evidence; speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment. State, Dept. of Transp. & Dev. v. Munson, 2014-0492 (La. App. 1st Cir. 1/21/15), 169 So. 3d 426, 432, writ denied, 2015-0299 (La. 4/24/15), 169 So. 3d 358. Where the landowner challenges the amount deposited as just compensation for an expropriation, a greater value must be proven by a preponderance of the evidence. State, Dept. of Transp. & Dev. v. Restructure Partners, L.L.C., 2007-1745 (La. App. 1st Cir. 3/26/08), 985 So. 2d 212, 220, writ denied, 2008-1269 (La. 9/19/08), 992 So. 2d 937. The question of what damages will appropriately compensate the landowner is one of fact. Such a determination is necessarily dependent on evidence presented by expert witnesses; however, the factfinder is not obligated to accept an expert's opinion in expropriation cases, since those opinions are not binding, but are advisory in nature. Munson, 169 So. 3d at 432.

In an expropriation proceeding, a factfinder's factual determinations as to the value of property and entitlement to other types of damages are subject to the manifest error standard of review, while the amount of damages awarded is subject to the abuse of discretion standard of review. The factfinder is not required to accept or reject the testimony of any particular witness, but may give whatever weight it considers appropriate to the testimony of any and all witnesses in making a factual determination of the value of the property taken. Richard, 196 So. 3d at 690.

5

## DISCUSSION

### Assignments of Error Nos. 1-4

Through its first four assignments of error, the City/Parish asserts that the trial court made "serious and significant" errors in valuing the property at issue, resulting in an "exorbitantly excessive award." We will address each parcel separately herein.

### Parcel 1-2
### (The Restaurant Property)

At the outset, we address the City/Parish's fourth assignment of error, alleging that the trial court erred in excluding relevant portions of the City/Parish's expert's testimony, as our resolution of this assignment of error may affect the applicable standard of review. See Walley v. Vargas, 2012-0022 (La. App. 1st Cir. 9/21/12), 104 So. 3d 93, 101.

Through this assignment of error, the City/Parish contends that the trial court erred in refusing to allow the City/Parish's expert to explain her opinion that the restaurant property (Parcel 1-2) was not unique and indispensable and, thus, should not be valued at its replacement cost. Generally, the trial court is granted broad discretion in making evidentiary rulings. The trial court's determinations will not be disturbed on appeal absent a clear abuse of discretion. See Emery v. Owens-Corp., 2000-2144 (La. App. 1st Cir. 11/9/01), 813 So. 2d 441, 448, writ denied, 2002-0635 (La. 5/10/02), 815 So. 2d 842. An abuse of discretion results from a conclusion based on an erroneous view of the law or from a conclusion reached capriciously or in an arbitrary manner. "Arbitrary or capricious" means the absence of a rational basis for the action taken. A.S. v. D.S., 2014-1098 (La. App. 4th Cir. 4/8/15), 165 So. 3d 247, 257.

Where a party asserts the trial court erred in permitting or excluding evidence, we consider whether the challenged evidentiary ruling was erroneous

and whether the error prejudiced the defendant. If not, a reversal is not warranted. Emery, 813 So. 2d at 449, citing LSA-C.E. art. 103. The party challenging the trial court's evidentiary ruling bears the burden of proving that the error had a substantial effect on the outcome of the case when compared to the record in its totality. See Emery, 813 So. 2d at 449.

The trial court's discretion in controlling the admission of expert testimony is well established in Louisiana jurisprudence. See LSA-C.E. art. 702; Mariakis v. N. Oaks Health Sys., 2018-0165 (La. App. 1st Cir. 9/21/18), 258 So. 3d 88, 95. The trial judge is vested with broad discretion in ruling on the scope of expert testimony. Giavotella v. Mitchell, 2019-0100 (La. App. 1st Cir. 10/24/19), 289 So. 3d 1058, 1070, writ denied, 2019-01855 (La. 1/22/20), 291 So. 3d 1044. However, if the exclusion of evidence taints a trial court's findings, this court steps into the shoes of the factfinder and conducts a *de novo* review of all admissible evidence to ensure a fair trial and fair judgment. A *de novo* review is not undertaken for every evidentiary exclusion. Instead, a *de novo* review is limited to consequential errors, or errors that prejudiced or tainted the trial court's finding. Walley, 104 So. 3d at 101.

At trial, the City/Parish tendered Angela Lemoine-Lakvold, MAI, SRA as an expert in appraisal matters, including eminent domain. After reviewing her curriculum vitae and with no objection from Mr. Mucciacciaro, the trial court accepted her as an expert, "allow[ed] ... to express an opinion on appraisals." However, despite being qualified as an expert, the trial court limited Ms. Lakvold's testimony regarding material and critical issues in the case. Specifically, the trial court inexplicably did not permit Ms. Lakvold to expound on how she calculated "just compensation." The trial court also refused to allow the City/Parish to fully question Ms. Lakvold concerning whether the property was "unique and indispensable." The record reflects that the City/Parish asked Ms. Lakvold one

7

question concerning her opinion on uniqueness, and she gave her response. Thereafter, the court engaged in a brief "discussion" with the witness on the issue, then refused to allow additional questions by the City/Parish on the subject of uniqueness, stating, "We've been down this road for the last 15 minutes on unique. I don't want to go back over that...." The record discloses no objection by Mr. Mucciacciaro to Ms. Lakvold's expertise and testimony. Due to the trial court's refusal to allow Ms. Lakvold to fully testify on the issue of uniqueness and indispensability, the City/Parish proffered the remainder of the omitted testimony.

Additionally, after careful review of the record before us, we find no attempt by Ms. Lakvold to render opinions outside of her expertise as to just compensation and the unique and indispensable character of Parcel 1-2. Instead, as an expert in real estate appraisal, it was clearly within Ms. Lakvold's field of expertise to opine on all aspects of appraising and valuing the property. By virtue of her training and experience, Ms. Lakvold's expertise in appraising real estate was established and accepted by the trial court and clearly qualified her to discuss the methodology she used in calculating just compensation for this parcel (and all the parcels at issue), as well as the critical issue of whether the property should be considered unique and indispensable for purposes of valuation.

Moreover, Mr. Mucciacciaro's experts were allowed to put on extensive evidence as to their calculations of just compensation and their opinions on the ultimate issue of whether the property should be considered unique and indispensable. By preventing the City/Parish from posing more than one question to its expert, Ms. Lakvold, to elicit her opinions on this issue, the trial court denied the City/Parish, as defendant-in-reconvention, the opportunity to rebut the evidence and testimony provided by Mr. Mucciacciaro's witnesses. See Fussell v. Roadrunner Towing & Recovery, Inc., 99-0194 (La. App. 1st Cir. 3/31/00), 765 So. 2d 373, 376, writ denied, 2000-1264 (La. 6/23/00), 765 So. 2d 1042. Because the

trial court prevented Ms. Lakvold from fully testifying with respect to her valuation of Parcel 1-2, the City/Parish ultimately was prevented from presenting its alternate view of and basis for the valuation of the parcel. This error interdicted the trial court's factual findings, and we are unable to say the limitation of Mrs. Lakvold's testimony was inconsequential, harmless error. If the trial court had allowed both parties to present their experts before making its factual determinations, the trial court's choice of alternative permissible views would not have been clearly wrong. However, the City/Parish's expert was not allowed to present an alternative view. Fussell, 765 So. 2d at 376, citing Stobart v. State, Dept. of Transp. & Dev., 617 So. 2d 880, 883 (La. 1993).

As noted above, where, as here, an error is found that has interdicted the trial court's factual findings, and a complete record has been made through a proffer, the appellate court then conducts a *de novo* review of the record, including the proffered evidence, to render a decision on appeal.[5] Walley, 104 So. 3d at 101; Williams v. Williams, 2006-2491 (La. App. 1st Cir. 9/14/07), 970 So. 2d 633, 640. However, when the erroneous ruling affects only one of the several findings, each finding must be evaluated to determine the applicability of the manifest error rule. Lam ex rel. Lam v. State Farm Mut. Auto. Ins. Co., 2005-1139 (La. 11/29/06), 946 So. 2d 133, 135-36.

Accordingly, because we find merit to the City/Parish's fourth assignment of error that the trial court abused its discretion in limiting Ms. Lakvold's testimony as to the valuation of Parcel 1-2, and because the record is otherwise complete with Ms. Lakvold's proffered testimony, we will now conduct a *de novo* review of the record on this issue. See Maldonado v. Kiewit Louisiana Co., 2012-

_____

[5] In this matter, the City/Parish proffered the remainder of Ms. Lakvold's testimony via a deposition.

1868 (La. App. 1ˢᵗ Cir. 5/30/14), 152 So. 3d 909, 927-28, writ denied, 2014-2246 (La. 1/16/15), 157 So. 3d 1129.

With regard to what amount constitutes just compensation due Mr. Mucciacciaro for the taking of the parcel of land which contained his restaurant, the record shows that the City/Parish expropriated 27,864 sq. ft. of Parcel 1-2, leaving a triangular-shaped parcel constituting approximately 15,300 sq. ft. or .35 acres. After filing the petition for expropriation, the City/Parish deposited $1,325,238.00 as just compensation for this **partial** taking of Parcel 1-2. This amount represents the higher of two appraisals performed by two different appraisers. In reaching this amount as just compensation, the City/Parish relied on the appraisal of Norbert F. Schexnayder, Jr., ARA, and found that the value of the land taken was $511,463.00, the value of the improvements taken was $551,280.00, and the amount of severance damages due was $262,495.00.[6]

As the party challenging the amount of just compensation deposited by the City/Parish, Mr. Mucciacciaro had the burden of proving, by a preponderance of the evidence, that he was entitled to a higher value. See Restructure Partners, L.L.C., 985 So. 2d at 220. The primary issues that were raised by Mr. Mucciacciaro as to Parcel 1-2 involve the resolution of whether just compensation for Parcel 1-2 includes replacement cost of the land and improvements expropriated and the date on which the property should be valued.

The Supreme Court first recognized replacement cost as an acceptable measure of just compensation in Constant. There, the Supreme Court noted that the measure of damages required in expropriation cases is "that an owner not only

---

[6] The term "severance damages" describes those compensable damages that flow from the partial expropriation of a tract of land, i.e., the difference between the value of the remaining property before and after the taking. The landowner has the burden of proving severance damages with a legal certainty by a preponderance of the evidence. The most commonly accepted and used approach for determining the amount of severance damages is the "before and after" method of appraisal. Restructure Partners, L.L.C., 985 So. 2d at 221; See also LSA-R.S. 48:453(B).

10

be paid the market value of property taken and severance damages to his remainder, but also that such an owner be put in as good a position pecuniarily as he would have been had his property not been taken."[7] Constant, 369 So. 2d at 701. However, the Supreme Court also stated:

> We do not, by these rulings, announce any general principle that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business, nor that the depreciation of the former asset should never be considered.

> Generally, we assume, the landowners may be compensated fully by other approaches than by awarding them the replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners' business operations on the site from which a part is taken.

Constant, 369 So. 2d at 706.

In accordance with Constant, if a landowner establishes that the location of the expropriated property or some physical feature of it is unique and indispensably related to the success of the landowner's business, just compensation requires the court to award replacement value. St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC, 2016-0096 (La. App. 4th Cir. 9/12/18), 255 So. 3d 57, 60, writs denied, 2018-1696, 2018-1692 (La. 2/11/19), 263 So. 3d 435, 263 So. 3d 436.

Mr. Mucciacciaro argues that the trial court did not err in its award and that he is entitled to recover the replacement cost, without applying depreciation, because the restaurant property was "both unique and the location indispensable to the conduct of the owner's business operation." In order for a landowner to prove

---

[7] In Constant, the Supreme Court found that the owners of a marina whose loading area was taken were entitled to the replacement cost of the loading area. The court determined that the waterfront property had been fortified with bulkheads and fill to allow heavy equipment to unload and enter the adjacent bayou. The evidence showed that because of a nearby bridge with low clearance, this particular location was unique for allowing heavy equipment to gain access to the bayou and reach pipeline facilities. The court also found that the area that was subject to the partial taking was an indispensable part of the landowners' marina business. 369 So. 2d at 703-04.

11

entitlement to replacement costs because his property is unique and indispensable, Constant requires that the property be both unique in nature and location and must be indispensable to the conduct of his business operations. On the record before us, we are unable to conclude that Mr. Mucciacciaro's property was shown to fit this specific requirement.

Mr. Mucciacciaro purchased the property after a previous restaurant on the property went out of business. Additionally, the record reflects that during the expropriation process, a similar restaurant location became available for purchase "right over the interstate" from the Pasta Garden location, although Mr. Mucciacciaro testified with regard to this other property, that he "didn't like the location" and it was "not something that...enticed" him. Another location near the intersection, which previously held a gas station, was also for sale at the time. The availability of these nearby properties around the interstate undermines the argument that the restaurant property is "unique in location."

Mr. Baldwin Justice, Mr. Mucciacciaro's real estate appraiser, testified that he considered Pasta Garden to be unique due to its location, accessibility, parking, and signage. Additionally, Kermit Williams, another appraiser who testified as an expert on behalf of Mr. Mucciacciaro, stated, "Unique means it has special qualities that make it unique" and "Indispensable means it's required for the owner's operation for business." Mr. Williams concluded that the restaurant property satisfied both criteria, but did not explain how or why this parcel of land was unique or indispensable to the success of Mr. Mucciacciaro's business. Ms. Lakvold conversely testified that "unique" means the subject property is "unlike anything else." She further testified that she did not believe this description typically applies to a restaurant as location is not the most important factor in a restaurant's success. Instead, she opined, the restaurant's food quality, service, and atmosphere are the key factors. She explained that restaurants can be placed

12

anywhere and, as an example, pointed to the fact that another restaurant in Baton Rouge is in a former bank building. Ms. Lakvold further testified that "indispensable" means that the property is "absolutely necessary" to the business and opined that there is nothing to show Mr. Mucciacciaro absolutely needed that specific building to operate his business because he could create the same food and service at another location.

On review, we conclude that although the record is clear that Mr. Mucciacciaro had a special affinity for this location and believed that it was indispensable to the operation of his business, his affinity for the property is not sufficient to establish, under the standard we must apply, that the property taken qualifies for replacement costs. Mr. Mucciacciaro likewise did not establish that the improvements on the property, such as the "custom fountain," landscaping, signage, and equipment, were unique and indispensable to his business such that an award of replacement costs was warranted. Cf. State ex rel. Dept. of Transp. & Dev. v. Wade, 2007-1385 (La. App. 3rd Cir. 5/28/08), 984 So. 2d 918, 923-24, writ denied, 2008-1896 (La. 12/12/08), 997 So. 2d 561 (where the court found that the building and improvements on the land were unique and indispensable to the landowner's trailer and all-terrain vehicle sales business because the landowner constructed the buildings to be "singular in nature" and designed to fit the owner's business plan and there was only one other commercial property available in the area). Accordingly, on *de novo* review, we are unable to find that Mr. Mucciaciaro is entitled to replacement cost for the **partial** expropriation of Parcel 1-2.

Pursuant to LSA-R.S. 48:453(A), "[t]he measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court... ." Thus, in conducting our *de novo* review, we value the property as of February 1, 2007. Mr. Mucciacciaro, as the party challenging the amount deposited as just compensation, bears the burden of

13

proving a higher amount by a preponderance of the evidence. <u>See</u> <u>Restructure</u> <u>Partners, L.L.C.</u>, 985 So. 2d at 220.

Having made a determination that Mr. Mucciacciaro is not entitled to replacement cost for the partial taking of Parcel 1-2, we note that the only evidence as to valuation presented by Mr. Mucciacciaro at trial was based on the **complete replacement** of the **entire parcel** of land, including Parcel 2-1 and the remaining part of Parcel 1-2, which was not expropriated. Mr. Mucciacciaro's calculation also included an additional 23,200 sq. ft., which he maintained was required to fully replace his parking lot. Thus, Mr. Mucciacciaro failed to prove his entitlement to a higher value of just compensation for the expropriated portion of Parcel 1-2.

Moreover, Mr. Mucciacciaro did not present any evidence as to severance damages for the remaining **portion** of land outside of the expropriated right-of-way. In fact, Mr. Justice explained that the scope of his work assignment was only to provide a replacement value for the **entire parcel** of land. He further testified that in his opinion, the remaining land from Parcel 1-2 is of "extremely limited utility" and has "no realistic commercial application" due to its irregular shape, such that he considered it to be an "uneconomic remainder." Ms. Lakvold also acknowledged that the functional utility of the remainder of Parcel 1-2 was limited and that it may be used as plottage. However, she explained that the land is still zoned C-AB-1, Commercial-Alcoholic Beverage One, and opined that it was suitable for a small commercial structure. Thus, based on the evidence in the record, we cannot say that the remainder of Parcel 1-2 constitutes an uneconomic remainder. Nevertheless, because the expropriation caused the parcel of land to have a **more limited** utility, Mr. Mucciacciaro is clearly entitled to an award for severance damages, which, based on the evidence in the record, is valued at

14

$262,495.00, as deposited by the City/Parish into the registry of the court in accordance with the appraisal of Mr. Schexnayder, the City/Parish's expert.

We are bound by the record before us on appeal, and based on this record, we are unable to find that Mr. Mucciacciaro met his burden of proving entitlement to a higher amount as just compensation for Parcel 1-2. Accordingly, we award just compensation in line with the City/Parish's valuation of Parcel 1-2 based on Mr. Schexnayder's Certificate of Just Compensation, which, as stated above, totaled $1,325,238.00 for the value of the land and improvements taken and severance damages.

In doing so, we note that Ms. Lakvold testified that she updated her report prior to trial and ended up with slightly different numbers than the City/Parish originally deposited into the registry of the court. Her total valuation for the land, improvements, and severance damages totaled $1,264,975.00. While this new valuation is slightly less than what the City/Parish deposited, we find the record supports maintaining the amount deposited as the proper amount for just compensation for this parcel.

Thus, finding merit to the City/Parish's assignments of error one through three as to Parcel 1-2, we find the amount of $1,325,238.00, as deposited by the City/Parish, to be just compensation for Parcel 1-2.[8] To the extent that the trial

---

[8] At trial and in her expert report, Ms. Lakvold testified that she did not calculate a value for "additional compensation," the third part of just compensation, for Parcel 1-2. Additional compensation is an extra element of just compensation that is intended to place the owner in the same pecuniary position that he enjoyed prior to the taking. In explanation, she stated that when a business is expropriated, the expropriating agency considers the value of the business in calculating its just compensation award. However, Ms. Lakvold testified that the City/Parish requested this information from Mr. Mucciacciaro on more than one occasion, but he did not provide the requested information. Where economic losses suffered by a business have been proven, damages for incidental and consequential loss must be awarded to fully compensate the owner. The owner of expropriated property must prove by a preponderance of evidence a business loss due to the expropriation to be compensated for the loss. State, Dept. of Transp. & Dev. v. G & B Oil Prod., Inc., 99-1248 (La. App. 3rd Cir. 6/21/00), 762 So. 2d 1123, 1125, writ denied, 2000-2196 (La. 10/27/00), 772 So. 2d 649. Accordingly, although the City/Parish concedes that its award of just compensation is incomplete, Mr. Mucciacciaro nonetheless had the burden of proving the amount of his business losses by a preponderance of the evidence. However, there is nothing in the record to indicate that he provided this necessary information to the City/Parish, nor did he provide his own estimation of same at trial.

15

court awarded Mr. Mucciacciaro a lump sum as additional compensation for all three parcels at issue, we amend the trial court's judgment accordingly to vacate its award of further just compensation for Parcel 1-2.

## Parcel 2-1
## (The "Office" Property)

The City/Parish deposited a total of $71,500.00 as just compensation for the **total** taking of this parcel of land, which the parties allege Mr. Mucciacciaro used as an office for his restaurant. Specifically, the City/Parish used Mr. Schexnayder's valuation of the property and deposited $17,000.00 for the value of the land taken and $54,500.00 for the value of the improvements taken. The City/Parish reached this valuation based on the fact that the property was 5,192 sq. ft. in size and zoned A-2, or single-family residential.

At trial, Mr. Mucciacciaro sought further compensation for this property and, in fact, as previously discussed, sought to have this property "lumped together" with the restaurant parcel of land and valued as an addition to the restaurant building.[9] Accordingly, Mr. Mucciacciaro only presented **commercial** valuations of this **residentially zoned** property. Although it appears the trial court agreed with Mr. Mucciacciaro and valued Parcels 1-2 and 2-1 together, assigning a commercial valuation to these properties and, apparently considering them together to be unique and indispensable and awarding a full replacement cost for both parcels of land, Ms. Lakvold's proffered testimony only dealt with the unique and indispensable nature of Parcel 1-2. For that reason, we are unable to say that the evidentiary error of limiting Ms. Lakvold's testimony interdicted the trial court's fact-finding process with respect to Parcel 2-1. Thus, we find the manifest error

---

[9] Specifically, in valuing Parcel 1-2, Mr. Mucciacciaro added the square footage of Parcel 2-1 to the square footage of the restaurant property, both inside and outside of the right-of-way, giving a total square footage of 48,056. Additionally, in calculating the replacement cost of the restaurant building, Mr. Mucciacciaro included the 1,074 sq. ft. of the house on Parcel 2-1 with the square footage of the original restaurant building.

16

standard of review is appropriate and applies herein with regard to our review of the trial court's factual findings as to the value of this parcel of land and entitlement to damages. See Lam, 946 So. 2d at 138 and Richard, 196 So. 3d at 690. However, in awarding Mr. Mucciacciaro all sums he sought at trial, the trial court clearly accepted Mr. Mucciacciaro's valuation of Parcel 2-1, a finding which we conclude was manifestly erroneous.

In considering what is the appropriate valuation applicable to Parcel 2-1, we note that a landowner is only entitled to compensation for the "highest and best use" of his property. Determining the "highest and best use" of land in an expropriation case involves several factors, including the scarcity of land available for that use and the use to which the property was being put at the time of the taking. It is well established that the current use of the property is presumed to be the highest and best use, and the burden of overcoming that presumption by proving the existence of a different highest and best use based on a potential, future use is on the landowner. St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC, 2017-0434 (La. 1/30/18), 239 So. 3d 243, 253, cert. denied, ___ U.S. ___, 139 S. Ct. 375, 202 L.Ed. 2d 301 (2018).

In his expert report, Mr. Justice explained that the highest and best use is the reasonably probable use that results in the highest value and noted that the use must be: (1) physically possible, (2) legally permissible, and (3) financially feasible.[10] However, Mr. Justice further set forth that the "first consideration relative to the determination of the highest and best use…is to determine whether or not a proposed use would be allowed under the zoning designation in which the subject property is situated."

_____

[10] In support of these statements, Mr. Justice relied on The Appraisal of Real Estate, p. 332 (14th Ed. 2013).

17

After careful review, we conclude that the pertinent factor in this case affecting the probability that Parcel 2-1 could have been put to a commercial use is the impact of a zoning ordinance on the development of the property. In determining the appropriate valuation, an illegal use, in contravention of a zoning ordinance, cannot be considered because it is highly speculative that such a use could be established and maintained. West Jefferson Levee Dist. v. Coast Quality Const. Corp., 93-1718 (La. 5/23/94), 640 So. 2d 1258, 1274, n. 28, cert. denied sub nom., 513 U.S. 1083, 115 S. Ct. 736, 130 L.Ed. 2d 639 (1995).

In this case, Parcel 2-1 undisputedly was contiguous to Parcel 1-2. However, while Parcel 1-2 was zoned for **commercial use**, Parcel 2-1 was zoned **single-family residential** and, in fact, was situated in the Eastgate Subdivision. Mr. Mucciacciaro testified that he bought this parcel of land shortly after he opened Pasta Garden, that they "didn't do any business" at the house, and that he never attempted to get the property rezoned or to obtain a zoning variance. Most pertinent to our inquiry, Mr. Mucciacciaro testified, "I used to go there and rest, take a nap every so often, you know...I don't know who named it the office, but it was not an office. It was my house that I rested [at] and I also used it to run payroll and to pay the bills."

Accordingly, we find no reasonable factual basis exists for finding that Parcel 2-1 should have been valued as a commercial property. Thus, the trial court manifestly erred in finding that Mr. Mucciacciaro met his burden of proving another highest and best use for this property. Instead, just compensation for this property should have been calculated based on its highest and best use in accordance with its residential zoning classification.

Where the applicable highest and best use of the property is a use according to its residential zoning, and Mr. Mucciacciaro did not put forth any evidence that valued Parcel 1-2 as a residential property, the trial court committed manifest error

18

in finding that he met his burden of proving that he is entitled to a greater value than that which was deposited by the City/Parish as just compensation. See Restructure Partners, L.L.C., 985 So. 2d at 220. Thus, considering the record before us and the evidence presented, we conclude that the City/Parish's deposit of $71,500.00 is just compensation for Parcel 2-1. Finding merit to the City/Parish's assignments of error one through three as to Parcel 2-1 as well, we also amend the trial court's lump sum award to vacate any further just compensation award for Parcel 2-1.

## Parcel 2-3
## (The Rental Property)

The trial court's erroneous ruling limiting Ms. Lakvold's testimony likewise did not affect its factual findings or monetary awards as to Parcel 2-3. Thus, the manifest error standard of review is also applicable to our review of the trial court's factual findings as to the value of Parcel 2-3 and entitlement to damages. See Lam, 946 So. 2d at 138 and Richard, 196 So. 3d at 690.

With regard to just compensation for the residential rental property owned by Mr. Mucciacciaro, the record indicates that prior to the taking, Parcel 2-3 was 6,783 sq. ft., and the City/Parish expropriated 1,706 sq. ft. of the parcel of land. The City/Parish deposited a total of $118,540.00 as just compensation for the **partial** taking of Parcel 2-3, which also represented the higher value assigned by the City/Parish's two appraisers. Specifically, the City/Parish deposited $5,118.00 for the value of the land taken (or $3.00/sq. ft. for 1,706 sq. ft of land), $100,374.00 for the value of the improvements taken, and $13,048.00 for severance damages.

At trial, Mr. Mucciacciaro sought additional compensation for Parcel 2-3 and maintained that $133,540.00 would be the proper amount as just compensation for this property. To reach this number, Mr. Mucciacciaro valued the **entire** piece

of land, not the land **actually taken** by the City/Parish. To find the value of the land, he further relied on a value of $3.25/sq. ft. for a total of $24,045.00,[11] another $100,374.00 for the improvements taken from the expropriated parcel, $3,000.00 for the landscaping taken, and an additional $121.00 for the improvements on the remainder of the land. In its judgment awarding Mr. Mucciacciaro all sums he sought at trial, the trial court clearly accepted Mr. Mucciacciaro's valuation of Parcel 2-3.

In valuing the **expropriated portion** of Parcel 2-3 at $3.00/sq. ft., Ms. Lakvold used a comparable sales approach of three similar properties to reach an amount. Conversely, Mr. Mucciacciaro used the valuation ($3.25/sq. ft.) provided by Mr. Schexnayder, the City/Parish's other appraiser, from a certificate of just compensation the City/Parish filed with the petition for expropriation. While Mr. Schexnayder was not called as a witness at trial, and the record does not otherwise reflect how he found this valuation, we note that both Mr. Schexnayder and Ms. Lakvold were retained by the City/Parish to calculate just compensation of the land at the time the petition for expropriation was filed. Mr. Justice did not value Parcel 2-3 in his report. Accordingly, in accepting the testimony of one expert over another, we cannot say the trial court committed manifest error by awarding just compensation based on the higher of the two values, namely $3.25/sq. ft., for the expropriated portion of Parcel 2-3.

The City/Parish relied on Ms. Lakvold's findings regarding the value of the **improvements** within the right-of-way on Parcel 2-3. In her updated report prepared a few months before trial, Ms. Lakvold found that Mr. Mucciacciaro was entitled to $101,168.00 for the various improvements contained within the right-of-way, which included the house (which was demolished), the sidewalk, fences and

---

[11] We note that the actual value of 6,783 sq. ft. of land at $3.25/sq. ft. totals $22,044.75, not $24,045.00 as set forth by Mr. Mucciacciaro.

gates on the property, and landscaping. While Mr. Mucciacciaro claimed to also rely on Ms. Lakvold's findings regarding the value of the improvements within the right-of-way, he requested and the trial court granted an additional $3,000.00 to him for the landscaping. Mr. Mucciacciaro also requested an additional $121.00 for improvements on the remainder of the parcel of land that was not taken by the City/Parish. However, Mr. Mucciacciaro does not explain the valuation for the improvements on the remainder of the property and his expert, Mr. Justice, did not value Parcel 2-3 in his expert report.

With regard to the **remaining** portion of Parcel 2-3 that was not expropriated, Mr. Mucciacciaro testified that while the City/Parish did not take the entirety of the property and he was left with a "large portion," the City/Parish did tear down the house. He testified that he has been unable to do anything else with the property as a result of the expropriation and that he is still paying taxes on land he cannot use. Mr. Justice testified that he considered the remainder of the property to be an "uneconomic remainder" without any possible economic or residential utilization and that the remaining parcel was "effectively... relegated to green space... for the roadway." Mr. Justice testified that accordingly, he did not think it was justified for the City/Parish to only expropriate part of the land and not the entire 6,783 sq. ft. Ms. Lakvold similarly stated in her report that the remaining parcel of land is irregularly shaped and its utility is limited by its shape and size, acknowledging that it could not be used as a "standalone development site" and that its "only reasonable use" was for "plottage."

Based on Mr. Justice's testimony and Ms. Lakvold's report, we find no manifest error in the trial court's implicit finding that Mr. Mucciacciaro met his burden of proving that the City/Parish did not justly compensate him for the taking of Parcel 2-3. See Restructure Partners, L.L.C., 985 So. 2d at 220 (the landowner must prove a greater value by a preponderance of the evidence). In finding that

21

Mr. Mucciacciaro should have been compensated for the **entire** parcel of land, not only the portion taken by the City/Parish, the trial court implicitly found that the remainder of the parcel of land had no remaining value. Accordingly, to the extent that the trial court's award to Mr. Mucciacciaro of the value of the **entire** parcel of land could be viewed as an attempt to calculate severance damages on the remainder, we cannot say the trial court was manifestly erroneous. See State, Dept. of Transp. & Dev. v. Caroline Atkins Crawford Bus. Trusts, 538 So. 2d 1078, 1081 (La. App. 3rd Cir. 1989), writ denied, 542 So. 2d 1381 (La. 1989) (the trial court found the parcel of land to be an "uneconomic unit" and awarded the value of the parcel of land as severance damages).

However, while the evidence in the record supports the finding that there is an extremely limited value, if any, to the remainder of the parcel of land and Mr. Mucciacciaro should be compensated accordingly, the trial court was required to only grant an award to him that is supported by the record. By awarding the additional $3,000.00 and $121.00 requested by Mr. Mucciacciaro for improvements and landscaping both inside and outside of the right-of-way, for which there is no evidentiary support or basis in the record, the trial court committed an abuse of discretion. Thus, we must amend the trial court's award to vacate these unsupported awards. Relying on Ms. Lakvold's updated report introduced at trial, we find that the highest amount that the trial court could have awarded was $102,651.00 for the improvements on the entire parcel of land. In valuing the **improvements** on Parcel 2-3, Ms. Lakvold included the house, sidewalk, fences and gates, and landscaping.[12] Therefore, we reduce the award accordingly.

---

[12] Specifically, Ms. Lakvold valued the improvements as follows: $98,950.00 for the single-family residence, $172.00 for the concrete sidewalk, $235.00 for the 4-foot chain link gate, $67.00 for the 4-foot high chain link fence, $992.00 for the 6-foot high wood fence, $235.00 for the 6-foot high wood gate, and $2,000.00 for landscaping.

22

With regard to **lost rentals**, Mr. Mucciacciaro testified that the property was a residential rental property that he leased at a rate of $1,000.00 per month prior to the expropriation and that, as a result of the pending expropriation, his tenant moved out with eight months left on the lease. Accordingly, Mr. Mucciacciaro maintained that he was entitled to $8,000.00 in lost rental profits. Considering this evidence, we likewise find no manifest error in the trial court's implicit finding that Mr. Mucciacciaro is entitled to **lost rental profits** due to his tenant moving out early as a result of the expropriation and no abuse of discretion in its award of $8,000.00 for this element of Mr. Mucciacciaro's damages. See State Dept. of Trans. & Dev. v. Lobel, 571 So. 2d 742 (La. App. 2nd Cir. 1990), writ not considered, 575 So. 2d 360 (La. 1991) (where the trial court awarded lost rental profits to a landowner when tenants vacated the premises in anticipation of the expropriation date).

In sum, we find no manifest error in the trial court's implicit finding that the City/Parish failed to adequately compensate Mr. Mucciacciaro for the partial taking of Parcel 2-3. However, for the reasons set forth above, we amend the trial court's award to Mr. Mucciacciaro to reflect that he is entitled to $132,695.75 as just compensation for the City/Parish's expropriation of Parcel 2-3, his residential rental property, representing $22,044.75 for the value of the land, $102,651.00 for the improvements, and $8,000,00 for lost rentals. Thus, Mr. Mucciacciaro is entitled to an additional $14,155.75 above the amount deposited by the City/Parish for the expropriation of Parcel 2-3.

## Assignment of Error No. 5
## (Attorney Fees)

In its fifth assignment of error, the City/Parish contends that the trial court erred in awarding excessive attorney fees. Louisiana Revised Statutes 48:453(E) provides that reasonable attorney fees may be awarded by the court if the amount

of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment; however, the amount awarded shall in no event exceed twenty-five percent of the difference between the award and the amount deposited. The award of attorney fees in an expropriation case is not automatic and is subject to the abuse of discretion standard. Munson, 169 So. 3d at 435.

In its judgment, the trial court awarded attorney fees in accordance with LSA-R.S. 48:453. On review, we find no error in the decision to award attorney fees and no abuse of the trial court's discretion in its determination that Mr. Mucciacciaro is entitled to an attorney fee award of twenty-five percent of the difference between the award and the amount deposited.[13] However, because on appeal we have reduced the trial court's award of additional just compensation to Mr. Mucciacciaro and determined that $14,155.75 is the sum due to Mr. Mucciacciaro in addition to the City/Parish's original deposit, Mr. Mucciacciaro is entitled to $3,538.94 in attorney fees. Thus, the trial court's attorney fee award is also amended accordingly.

## ANSWER TO APPEAL

In his answer to the City/Parish's appeal, Mr. Mucciacciaro alleges that although the trial court's judgment ordered that the City/Parish be taxed with all costs, including accrued court costs, the trial court erred when stating the amount of such costs in the judgment. He contends that he is entitled to a greater amount of court costs than the amount expressed by the trial court because the costs awarded were "incomplete…and…inadequate." In response, the City/Parish points out that the trial court signed Mr. Mucciacciaro's proposed judgment in this

---

[13] Mr. Mucciacciaro's counsel testified that he has been involved in this matter since the initial discussions concerning the expropriation of Mr. Mucciacciaro's property began seventeen years ago. He further testified that this case was "complex," that he participated in discovery, prepared for and attended depositions, and has been involved in settlement negotiations and a "limitless number" of conferences with appraisers, cost estimators, and experts.

case and awarded Mr. Mucciacciaro "every single penny for which he prayed," and that the trial court did not commit error by failing to give Mr. Mucciacciaro costs which were not included in his proposed judgment.

The only costs that can be taxed against a litigant are those specifically provided for by statute. Therefore, a decree ordering a litigant to pay all costs means that he is to pay costs provided for by statute, sometimes termed "legal costs." This rule regarding the obligation to pay such costs has also been recognized by this court to apply in expropriation cases. St. Tammany Parish Hosp. Serv. Dist. No. 2 v. Schneider, 2000-0247 (La. App. 1st Cir. 5/11/01), 808 So. 2d 576, 588. The trial or appellate court may award court costs against the state or any political subdivision, but only in favor of a successful party. LSA-R.S. 13:5112.

Accordingly, given Mr. Mucciacciaro's timely answer to the appeal seeking to correct the amount of court costs awarded, and the trial court's decision to award costs and fix same against the City/Parish and in favor of Mr. Mucciacciaro as the successful party at trial, we grant the relief sought in his answer to the appeal and remand this matter to the trial court for the limited purpose of determining and setting the appropriate amount of trial court costs to be paid by the City/Parish.

## CONCLUSION

For the above and foregoing reasons, we amend the portion of the trial court's December 15, 2020 judgment awarding additional just compensation and attorney fees, as follows:

It is hereby ORDERED, ADJUDGED AND DECREED that the total amount of just compensation due defendant/plaintiff-in-reconvention, Giovanni Mucciacciaro for the expropriation of his property by plaintiff/defendant-in-reconvention, the City of Baton Rouge and Parish of East Baton Rouge, is $1,529,433.75, consisting of just compensation for Parcel 1-2 in the amount of

25

$1,325,238.00; just compensation for Parcel 2-1 in the amount of $71,500.00; and just compensation for Parcel 2-3 in the amount of $132,695.75.

It is further ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendant/plaintiff-in-reconvention, Giovanni Mucciacciaro, and against plaintiff/defendant-in-reconvention, City of Baton Rouge and Parish of East Baton Rouge, in the sum of $14,155.75, representing the additional just compensation due plaintiff-in-reconvention, with legal interest thereon from July 2, 2012 (the date of reconventional demand) until paid, together with attorney fees in the amount of $3,538.94, representing twenty-five percent of this award.

Additionally, we grant Mr. Mucciacciaro's answer to the appeal, vacate the portion of the trial court's judgment awarding trial court costs in the amount of $1,436.88, and remand to the trial court for the limited purpose of setting the proper award of costs.

In all other respects, the trial court's December 15, 2020 judgment is affirmed.

Costs of this appeal in the amount of $2,897.48 are assessed equally against the City of Baton Rouge and Parish of East Baton Rouge and Giovanni Mucciacciaro.

**JUDGMENT AFFIRMED IN PART AND AMENDED IN PART; ANSWER TO APPEAL GRANTED; REMANDED WITH INSTRUCTIONS.**